**United States Department of Justice**

*United States Attorney*
*Southern District of West Virginia*

*Robert C. Byrd United States Courthouse*
*300 Virginia Street, East*
*Suite 4000*
*Charleston, WV 25301*
*1-800-659-8726*

*Mailing Address*
*Post Office Box 1713*
*Charleston, WV 25326*
*304-345-2200*
*FAX: 304-347-5104*

June 6, 2019

Ray Nolan, Esquire
4625 WV-152
Lavalette, WV 25535

FILED
SEP - 3 2019
RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

    Re:  United States v. Jeffrey Miller
          Criminal No. _____

Dear Mr. Nolan:

    This will confirm our conversations with regard to your client, Jeffrey Miller (hereinafter "Mr. Miller"). As a result of these conversations, it is agreed by and between the United States and Mr. Miller as follows:

    1.  **CHARGING AGREEMENT.** The United States will file an information in the United States District Court for the Southern District of West Virginia charging Mr. Miller with six counts of violating 18 U.S.C. § 1030(a)(2)(B). A copy of this information is attached hereto as "Plea Agreement Exhibit A."

    2.  **RESOLUTION OF CHARGES.** Mr. Miller will plead guilty to each of the six violations of 18 U.S.C. § 1030(a)(2)(B) (unauthorized access of a computer), as charged in said information.

    3.  **MAXIMUM POTENTIAL PENALTY.** The maximum penalty to which Mr. Miller will be exposed by virtue of this guilty plea is as follows:

Each Individual Count

    (a)  Imprisonment for a period of 1 year;

                                              */s/*
                                            _____
                                            Defendant's
                                            Initials

Ray Nolan, Esquire
June 6, 2019                                           Re: Jeffrey Miller
Page 2

    (b)   A fine of $100,000;

    (c)   A term of supervised release of 1 year;

    (d)   A mandatory special assessment of $25 pursuant to 18 U.S.C. § 3013.

Total Maximum Penalty

    (a)   Imprisonment for a period of 6 years;

    (b)   A fine of $600,000;

    (c)   A term of supervised release of 1 year;

    (d)   A mandatory special assessment of $150 pursuant to 18 U.S.C. § 3013.

    4.   **SPECIAL ASSESSMENT.** Prior to the entry of a plea pursuant to this plea agreement, Mr. Miller will tender a check or money order to the Clerk of the United States District Court for $150, which check or money order shall indicate on its face the name of defendant and the case number. The sum received by the Clerk will be applied toward the special assessment imposed by the Court at sentencing. Mr. Miller will obtain a receipt of payment from the Clerk and will tender a copy of such receipt to the United States, to be filed with the Court as an attachment to this plea agreement. If Mr. Miller fails to provide proof of payment of the special assessment prior to or at the plea proceeding, the United States will have the right to void this plea agreement. In the event this plea agreement becomes void after payment of the special assessment, such sum shall be promptly returned to Mr. Miller.

    5.   **PAYMENT OF MONETARY PENALTIES.** Mr. Miller authorizes the Financial Litigation Unit in the United States Attorney's Office to obtain a credit report from any major credit reporting agency prior to sentencing in order to assess his financial condition for sentencing purposes. Mr. Miller agrees not to



                                                                    Defendant's
                                                                    Initials

Ray Nolan, Esquire
June 6, 2019                                          Re: Jeffrey Miller
Page 3

object to the District Court ordering all monetary penalties (including the special assessment, fine, and court costs) to be due and payable in full immediately and subject to immediate enforcement by the United States. So long as the monetary penalties are ordered to be due and payable in full immediately, Mr. Miller further agrees not to object to the District Court imposing any schedule of payments as merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment.

Mr. Miller authorizes the United States, through the Financial Litigation Unit, to submit any unpaid criminal monetary penalty to the United States Treasury for offset in accordance with the Treasury Offset Program, regardless of the defendant's payment status or history at that time.

In addition to any payment ordered by the Court, Mr. Miller shall pay all monies received from any source other than earned income, including without limitation lottery winnings, gambling proceeds, judgments, inheritances, and tax refunds, toward the court ordered restitution or fine.

Mr. Miller agrees that if he retains counsel or has appointed counsel in response to the United States' efforts to collect any monetary penalty, he shall immediately notify the United States Attorney's Office, Attention: Financial Litigation Unit, P.O. Box 1713, Charleston, West Virginia 25326-1713, in writing and shall instruct his attorney to notify FLU immediately of his representation.

6.   **COOPERATION.**  Mr. Miller will be forthright and truthful with this office and other law enforcement agencies with regard to all inquiries made pursuant to this agreement, and will give signed, sworn statements and grand jury and trial testimony upon request of the United States. In complying with this provision, Mr. Miller may have counsel present except when appearing before a grand jury.

7.   **USE IMMUNITY.**  Unless this agreement becomes void due



_____
Defendant's
Initials

Ray Nolan, Esquire
June 6, 2019                                    Re: Jeffrey Miller
Page 4

to a violation of any of its terms by Mr. Miller, and except as expressly provided for in paragraph 8 below, nothing contained in any statement or testimony provided by him pursuant to this agreement, or any evidence developed therefrom, will be used against him, directly or indirectly, in any further criminal prosecutions or in determining the applicable guideline range under the Federal Sentencing Guidelines.

     8.    **LIMITATIONS ON IMMUNITY.**  Nothing contained in this agreement restricts the use of information obtained by the United States from an independent, legitimate source, separate and apart from any information and testimony provided pursuant to this agreement, in determining the applicable guideline range or in prosecuting Mr. Miller for any violations of federal or state laws. The United States reserves the right to prosecute Mr. Miller for perjury or false statement if such a situation should occur pursuant to this agreement.

     9.    **STIPULATION OF FACTS AND WAIVER OF FED. R. EVID. 410.** The United States and Mr. Miller stipulate and agree that the facts comprising the offense of conviction and relevant conduct include the facts outlined in the "Stipulation of Facts," a copy of which is attached hereto as "Plea Agreement Exhibit B." The United States does not propose that the stipulation of facts contains all relevant conduct.

     Mr. Miller agrees that if he withdraws from this agreement, or this agreement is voided as a result of a breach of its terms by him, and he is subsequently tried for his conduct alleged in the indictment and other relevant conduct, as more specifically described in the Stipulation of Facts, the United States may use and introduce the Stipulation of Facts in the United States' case-in-chief, in cross-examination of Mr. Miller or of any of his witnesses, or in rebuttal of any testimony introduced by him or on his behalf. Mr. Miller knowingly and voluntarily waives, see *United States v. Mezzanatto*, 513 U.S. 196 (1995), any right he has pursuant to Fed. R. Evid. 410 that would prohibit such use of the Stipulation of Facts. If the Court does not accept the plea


Defendant's Initials

Ray Nolan, Esquire
June 6, 2019                                    Re: Jeffrey Miller
Page 5

agreement through no fault of the defendant, or the Court declares the agreement void due to a breach of its terms by the United States, the Stipulation of Facts cannot be used by the United States.

The United States and Mr. Miller understand and acknowledge that the Court is not bound by the Stipulation of Facts and that if some or all of the Stipulation of Facts is not accepted by the Court, the parties will not have the right to withdraw from the plea agreement.

10. **AGREEMENT ON SENTENCING GUIDELINES.** Based on the foregoing Stipulation of Facts, the United States and Mr. Miller agree that the following provisions of the United States Sentencing Guidelines apply to this case:

USSG §2B1.1

| | |
|---|---|
| Base offense level | 6 |
| 2B1.1(b)(18) *(offense involved an intent to obtain personal information)* | +2 |
| Adjusted offense level | 8 |

The United States and Mr. Miller acknowledge and understand that the Court and the Probation Office are not bound by the parties' calculation of the United States Sentencing Guidelines set forth above and that the parties shall not have the right to withdraw from the plea agreement due to a disagreement with the Court's calculation of the appropriate guideline range.

11. **WAIVER OF APPEAL AND COLLATERAL ATTACK.** Mr. Miller knowingly and voluntarily waives his right to seek appellate review of his conviction and of any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground



Defendant's Initials

Ray Nolan, Esquire
June 6, 2019                                          Re: Jeffrey Miller
Page 6

whatsoever, including any ground set forth in 18 U.S.C. § 3742, so long as that sentence of imprisonment, fine, or term of supervised release is below or within the Sentencing Guideline range corresponding to offense level 8, regardless of Criminal History category. Mr. Miller also knowingly and voluntarily waives any right to seek appellate review of any claim or argument that (1) the statute of conviction, 18 U.S.C. § 1030, is unconstitutional, and (2) Mr. Miller's conduct set forth in the Stipulation of Facts (Plea Agreement Exhibit A) does not fall within the scope of 18 U.S.C. § 1030(a).

The United State also waives its right to seek appellate review of any sentence of imprisonment or fine imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever, including any ground set forth in 18 U.S.C. § 3742, so long as that sentence of imprisonment or fine is within or above the Sentencing Guideline range corresponding to offense level 6, regardless of Criminal History category.

Mr. Miller also knowingly and voluntarily waives the right to challenge his guilty plea and conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.

The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

12. **WAIVER OF FOIA AND PRIVACY RIGHT.** Mr. Miller knowingly and voluntarily waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without any limitation any records that may be sought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, following final disposition.

_____
Defendant's
Initials

Ray Nolan, Esquire
June 6, 2019                          Re: Jeffrey Miller
Page 7

    13. **FINAL DISPOSITION.** The matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises as to a specific sentence. The United States reserves the right to:

    (a)    Inform the Probation Office and the Court of all relevant facts and conduct;

    (b)    Present evidence and argument relevant to the factors enumerated in 18 U.S.C. § 3553(a);

    (c)    Respond to questions raised by the Court;

    (d)    Correct inaccuracies or inadequacies in the presentence report;

    (e)    Respond to statements made to the Court by or on behalf of Mr. Miller;

    (f)    Advise the Court concerning the nature and extent of Mr. Miller's cooperation; and

    (g)    Address the Court regarding the issue of Mr. Miller's acceptance of responsibility.

    14. **VOIDING OF AGREEMENT.** If either the United States or Mr. Miller violates the terms of this agreement, the other party will have the right to void this agreement. If the Court refuses to accept this agreement, it shall be void.

    15. **ENTIRETY OF AGREEMENT.** This written agreement constitutes the entire agreement between the United States and Mr. Miller in this matter. There are no agreements, understandings, or recommendations as to any other pending or future charges against Mr. Miller in any Court other than the United States District Court for the Southern District of West Virginia.

    Acknowledged and agreed to on behalf of the United States:



                                                                Defendant's
                                                                Initials

Ray Nolan, Esquire
June 6, 2019                                  Re: Jeffrey Miller
Page 8

                         MICHAEL B. STUART
                         United States Attorney

            By: _____
                         STEFAN J.O. HASSELBLAD
                         Assistant United States Attorney

SJOH/dla

                                                                                                                          Defendant's
                                                                                                                                        Initials

Ray Nolan, Esquire
June 6, 2019                                            Re: Jeffrey Miller
Page 9


I hereby acknowledge by my initials at the bottom of each of the foregoing pages and by my signature on the last page of this nine-page agreement that I have read and carefully discussed every part of it with my attorney, that I understand the terms of this agreement, and that I voluntarily agree to those terms and conditions set forth in the agreement. I further acknowledge that my attorney has advised me of my rights, possible defenses, the Sentencing Guideline provisions, and the consequences of entering into this agreement, that no promises or inducements have been made to me other than those in this agreement, and that no one has threatened me or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.


_____          __7-15-19_____
JEFFREY MILLER                           Date Signed
Defendant


_____          __7/15/19_____
RAY NOLAN, ESQUIRE                       Date Signed
Counsel for Defendant

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON

UNITED STATES OF AMERICA

v.                          Criminal No. _____
                                        18 U.S.C. § 1030(a)(2)(B)

JEFFREY S. MILLER

INFORMATION

The United States Attorney charges:

Background

At all relevant times:

The Veterans Benefits Administration

1.  The Veterans Benefits Administration ("VBA") was a federal agency that provided assistance and compensation to veterans. The VBA had offices across the United States, including an office in Huntington, West Virginia in the Southern District of West Virginia.

2.  The VBA provided compensation to veterans who suffered disabilities resulting from military service. In order to determine veterans' eligibility for compensation, the VBA maintained medical records that contained substantial amounts of individually identifiable and private health information, including veterans' names, contact information, social security numbers, medical treatment history, disabilities, and

PLEA AGREEMENT EXHIBIT A

compensation levels. The VBA maintained two main systems of records: SHARE and the Veterans Benefits Management System ("VBMS").

3. As required by federal law, the VBA protected veterans' records and information. For instance, VBA prohibited employees from accessing a veteran's records unless access was required for a work-related purpose. The VBA and federal law also prohibited disclosure of veterans' records without a legitimate purpose.

### The Defendant

4. Defendant JEFFREY S. MILLER was employed as a Claims Assistant at the VBA office in Huntington, West Virginia in the Southern District of West Virginia.

5. As a Claims Assistant, defendant MILLER could view VBA records in order to fulfill certain administrative responsibilities. However, the VBA authorized defendant MILLER to access those records only when access was required for a legitimate work-related task. Defendant MILLER was not authorized to access veterans' records for any other purpose, including any personal purpose.

### Defendant MILLER's Training on Access and Disclosure

6. The VBA instructed defendant MILLER that he was not authorized to access veterans' records except for legitimate work-

related purpose, and that unauthorized access of such records was illegal under federal law.

7. Defendant MILLER completed multiple VBA training courses that informed him that he was prohibited from accessing veterans' medical records for a non-work-related purpose, such as "[c]hecking [a] veteran's or employee's health records out of curiosity."

Defendant MILLER Unlawfully Accessed Veterans' Records

8. Between January 24, 2018 and April 16, 2018, while working as an employee of the VBA office in Huntington, West Virginia, defendant MILLER accessed the medical Records of Known Persons A, B, C, D, and E, who were defendant MILLER's co-workers. Defendant MILLER accessed these records without authorization and without any legitimate work-related purpose. Defendant MILLER knew he did not have authorization to access these records, but did so anyway.

9. Between March 16, 2018 and May 24, 2018, while working as an employee of the VBA office in Huntington, West Virginia, defendant MILLER accessed the medical Records of Known Person F, who was a public figure. Defendant MILLER accessed these records without authorization and without any legitimate work-related purpose. Defendant MILLER knew he did not have authorization to access these records, but did so anyway.

10. On or about May 17, 2018, at or near Huntington, West Virginia, defendant MILLER took a photo of Known Person F's SHARE medical records. Defendant MILLER then sent that picture to another individual known to the United States Attorney. Defendant MILLER had no legitimate work-related justification or excuse for making this disclosure.

**Counts 1-6**
**(Fraud in Connection with Computers)**

11. The United States Attorney realleges and incorporates by reference paragraphs 1-10, as if fully set forth herein.

12. On or about the dates specified below for each count, at or near Huntington, West Virginia and within the Southern District of West Virginia, defendant JEFFREY MILLER intentionally exceeded authorized access to a computer, and thereby obtained information from an agency of the United States, that is, Veteran's Benefits Administration's medical information relating to the persons specified below:

| Count | Approx. Dates | Unauthorized Access Type |
|---|---|---|
| 1 | 1/24/18 | Access to Known Person A's medical records without a legitimate work-related purpose |
| 2 | 2/2/18 | Access to Known Person B's medical records without a legitimate work-related purpose |
| 3 | 3/16/18 | Access to Known Person C's medical records without a legitimate work-related purpose |

| | | |
|---|---|---|
| 4 | 4/10/18 | Access to Known Person D's medical records without a legitimate work-related purpose |
| 5 | 4/16/18 | Access to Known Person E's medical records without a legitimate work-related purpose |
| 6 | 3/16/18 – 5/24/18 | Access to Known Person F's medical records without a legitimate work-related purpose |

All in violation of Title 18, United States Code, Section 1030(a)(2)(B).

MICHAEL B. STUART
United States Attorney

By: _____
STEFAN J. O. HASSELBLAD
Assistant United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.  CRIMINAL NO. _____

JEFFREY MILLER

## STIPULATION OF FACTS

The United States and Jeffrey Miller (hereinafter "I") stipulate and agree that the facts comprising the offenses of conviction in the Information in the Southern District of West Virginia include the following:

### BACKGROUND

At all relevant times:

#### The Veterans Benefits Administration

The Veterans Benefits Administration ("VBA") was a federal agency that provides assistance and compensation to veterans. The VBA had offices across the United States, including an office in Huntington, West Virginia in the Southern District of West Virginia.

The VBA provides compensation to veterans who suffered disabilities resulting from military service. In order to determine veterans' eligibility for compensation, the VBA maintained medical records that contained substantial amounts of individually identifiable and private health information, including veterans' names, contact information, social security numbers, medical treatment history, disabilities, and compensation levels. The VBA maintained two main systems of records: SHARE and the Veterans Benefits Management System ("VBMS").

As required by federal law, the VBA protected veterans' records and information. For instance, the VBA prohibited employees from accessing a veteran's records unless access was

PLEA AGREEMENT EXHIBIT B

required for a work-related purpose.  The VBA and federal law also prohibited disclosure of veterans' records without a legitimate purpose.

## FACTUAL BASIS FOR JEFFREY MILLER

I was employed as a Claims Assistant at the VBA office in Huntington, West Virginia in the Southern District of West Virginia.  As a Claims Assistant, I could view VBA records in order to fulfill certain administrative responsibilities.  However, the VBA authorized me to access those records only when access was required for a legitimate work-related task.  I was not authorized to access veterans' records for any other purpose, including any personal purpose.

The VBA instructed me that I was not authorized to access veterans' records except for legitimate work-related purpose, and that unauthorized access of such records was illegal under federal law.  For example, I completed a VBA training course called "Privacy and HIPAA Focused Training" on or about the following dates:  May 27, 2014; May 18, 2015; April 14, 2016; March 16, 2017; and February 15, 2018.  Each time I completed the course, I reviewed the following information:

> Personally identifiable information (PII) and protected health information (PHI) on Veterans and employees should only be collected, accessed or viewed by VHA employees with a need for that information in the performance of their official VA duties for payment, treatment or health care operations. VA employees are prohibited from accessing or viewing the PII/PHI of their coworkers or Veterans out of curiosity.
>
> The following are examples of unauthorized use and or access that will result in appropriate disciplinary action:
> - Accessing information outside the scope of your functional category.
> - Checking a co-worker's health record upon their request without an official need to know. . . .
> - Checking Veteran's or employee's health records out of curiosity. . . .
> - Removing III/PHI from the facility without permission from the supervisor/facility director

> •Repeating information to VA employees outside of your job responsibilities is a privacy violation. Examples include co-workers, unions, family members and friends.

Employees' access or use of PHI is limited to the minimum necessary standard of information needed to perform their official job duties. . . .

### Unlawful Access to Veterans' Records

On or about January 24, 2018, while working as an employee of the VBA office in Huntington, West Virginia, I accessed the medical records of Known Person A, who was my co-worker. I accessed Known Person A's records without authorization and without any legitimate work-related purpose. I knew I did not have authorization to access Known Person A's records, but did so anyway.

On or about February 2, 2018, while working as an employee of the VBA office in Huntington, West Virginia, I accessed the medical records of Known Person B, who was my co-worker. I accessed Known Person B's records without authorization and without any legitimate work-related purpose. I knew I did not have authorization to access Known Person B's records, but did so anyway.

On or about March 16, 2018, while working as an employee of the VBA office in Huntington, West Virginia, I accessed the medical records of Known Person C, who was my co-worker. I accessed Known Person C's records without authorization and without any legitimate work-related purpose. I knew I did not have authorization to access Known Person C's records, but did so anyway.

On or about April 10, 2018, while working as an employee of the VBA office in Huntington, West Virginia, I accessed the medical records of Known Person D, who was my co-worker. I accessed Known Person D's records without authorization and without any legitimate work-related purpose. I knew I did not have authorization to access Known Person D's records, but did so anyway.

On or about April 16, 2018, while working as an employee of the VBA office in Huntington, West Virginia, I accessed the medical records of Known Person E, who was my co-worker. I accessed Known Person E's records without authorization and without any

legitimate work-related purpose. I knew I did not have authorization to access Known Person E's records, but did so anyway.

Between on or about March 16, 2018 until on or about May 24, 2018, while working as an employee of the VBA office in Huntington, West Virginia, I accessed the medical records of Known Person F multiple times. Known Person F is a public figure. I accessed Known Person F's records without authorization and without any legitimate work-related purpose. I knew I did not have authorization to access Known Person F's records, but did so anyway.

On or about May 17, 2018, at or near Huntington, West Virginia, I took a photo of Known Person F's SHARE medical records. I then sent that picture to an acquaintance. I had no legitimate work-related justification or excuse for making this disclosure.

On July 17, 2018, I admitted to a federal agent that I had accessed Known Person F's records and sent a picture of those records to an acquaintance.

This Stipulation of Facts does not contain each and every fact known to defendant and to the United States concerning my involvement in the charge set forth in the Information.

Stipulated and agreed to:

_____          7-15-19
JEFFREY MILLER                           Date
Defendant

_____          7/15/19
Ray Nolan                                Date
Counsel for Defendant

_____          7/16/19
STEFAN J.O. HASSELBLAD                   Date
Assistant United States Attorney